[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried on June 12, 1968 in New York, New York. The court has jurisdiction as the plaintiff has resided continuously in Connecticut since July, 1999, and all statutory stays have expired. There are two children issue of the marriage both of whom are adults. Both parties testified that their marriage has irretrievably broken down and judgment may enter dissolving the marriage on that ground.
The plaintiff, age 54, reports that he enjoys good health. He is a graduate of the University of Wisconsin where he earned a B.A. degree in political science. He has been employed for the last thirty years with a company that imports candy. He is currently the general manager and apparently plays an important role in the operation of the business.
The defendant, age 53, also attended the University of Wisconsin. She worked during the early years of the marriage but retired to be a stay at CT Page 5573 home mom after the arrival of her first child. She currently works part time as a teacher in the religious school of a temple. She stated that she suffers from various medical conditions, none of which appears to be disabling at the present time.
The plaintiff voiced no strong complaints about the defendant and admitted the defendant was a good mother. His only stated reason for the cause of the breakdown in their relationship was that over the last several years he found less common interests with the defendant, and each wanted to do different things. The defendant declined to criticize the plaintiffs behavior during the marriage.
This is an unfortunate situation where two decent and responsible people who have spent most of their adult lives together must now end their relationship. The court declines to assess fault to either party.
The court has carefully considered the criteria set forth in Connecticut General Statutes, Sections 46b-62, 46b-81 and 46b-82 in reaching the decisions reflected in the orders that follow.
The following orders may enter.
 (1) The plaintiff shall pay to the defendant as periodic alimony the sum of eight thousand dollars ($8,000) per month. This award is based on the earned income reported by the plaintiff on his current financial affidavit, including his base salary, expense account, January and June bonuses. All of which total approximately $275,000 per year. Also, the court considered the defendant's income to be approximately $11,000 per year.
The payments shall commence on May 1, 2001 and on the first day of each month thereafter, payable in advance. They shall continue until the death of either party, the remarriage of the defendant, or cohabitation by the defendant pursuant to Connecticut General Statutes, Section 46b-86 (b), whichever event first occurs.
In the event the plaintiff receives an annual discretionary bonus in addition to the two listed on his financial affidavit, either by direct payment and/or by an increase in his unreimbursed expense account, then, in that event, the plaintiff shall pay to the defendant as additional periodic alimony 20% of the first $50,000 gross amount received by the plaintiff. (A maximum payment of $10,000 per year). Payment to the defendant shall be made 30 days after the bonus is received by the CT Page 5574 plaintiff.
Commencing January, 2003, the defendant shall notify the plaintiff within 30 days after the end of the previous calendar year of any gifts or distributions from her mother or from the estates of her grandmother or father that were in excess of $25,000 during that year, for as long as the plaintiff is obligated to pay periodic alimony.
A contingent wage withholding order may enter.
 (2) The defendant is currently insured under certain medical policies made available through the plaintiffs employer. The plaintiff shall take all steps necessary to assist the defendant in the continuation of this insurance by transferring her coverage from group policies to individual policies to the extent permitted by law or the policy. The defendant shall be responsible for the cost of said insurance.
 (3) The plaintiff shall transfer to the defendant, by quit claim deed, his entire interest in the marital residence at 26 Westminster Drive, Croton on Hudson, New York, free of liens.
 As an assignment of property, the defendant shall execute a promissory note to the plaintiff in the amount of $70,000 at 8% simple interest, payable in arrears. The note shall be due on the defendant's remarriage, the sale of the residence or June 30, 2002, whichever first occurs.
 (4) The defendant shall transfer to the plaintiff, by quit claim deed her entire interest in the real property located at 7294 Panache Way, Boca Point, Boca Raton, Florida. The plaintiff shall be entitled to the country club bond related to this property, free of any claims from the defendant.
 (5) The plaintiff is awarded the entire interest in the real property located at 9233 S.W. 8th Street, #302, Isle of Boca Dunes, Boca Raton, Florida. The plaintiff shall retain all the household furniture and furnishing located on the premises.
 (6) The plaintiff is awarded:
(a) His personal Fleet checking account;
 (b) The three life insurance policies listed on his financial affidavit (April 5, 2001), including the cash surrender value of the Canseco policy; CT Page 5575
 (c) His IRA Fidelity Account (#157-226491);
 (d) The Federal and N.Y. state tax refunds for 2000, in the approximate amount of $18,000;
 (e) His watch and coins;
(f) The personal property listed on Schedule A affixed hereto.
 The plaintiff may remove from the marital residence the furniture, art work and any clothing he may have as listed on Schedule A no later than June 1, 2001. The plaintiff shall give the defendant not less than 48 hours notice of when he wishes to remove the items. The defendant may be present to observe the move.
 (7) The defendant is awarded:
(a) Her Fleet Bank checking and money market accounts;
(b) Her Fleet Certificate of Deposit;
(c) Her Fidelity IRA account;
(d) Her inheritance from her father;
(e) Her entire interests in her family trusts;
(f) The Castaneda statue;
 (g) All her jewelry and personal effects in her possession and furniture and furnishings located in the marital residence except as otherwise specifically noted herein.
 (8) From the escrow funds currently held by the defendant's attorney, the following disbursements shall be made:
 A. Full payment of the equity loan on the marital residence, approximately $37,000;
 B. Payment to the defendant the sum of $33,000 to enable her to purchase a new automobile.
 The plaintiff shall continue to arrange for the defendant to have the use of the current vehicle she uses or a comparable substitute until 7 days after the defendant receives the funds CT Page 5576 awarded to her.
 C. The balance of the escrow funds shall be equally divided between the parties.
 (9) The parties shall equally divide on an in-kind basis the joint Fleet account, #9370201337; the cash in the bank vault; Fidelity Security account, #X57083879.
 (10) The plaintiffs profit sharing plan is valued at Seven Hundred Forty-Seven Thousand Seven Hundred Eighteen Dollars ($747,718.00) as of February 28, 2001. This amount plus any accrued interest thereon shall be equally divided as of April 30, 2001 subject to gains or losses up through the date of transfer. The division shall be accomplished by way of a Qualified Domestic Relations Order ("QDRO"). Any subsequent contribution of principal to the plan for the benefit of the plaintiff subsequent to February 28, 2001 shall remain the exclusive property of the plaintiff. The court reserves jurisdiction to implement this order.
 (11) The plaintiff shall cause to be transferred to the defendant or permit the defendant to use one half of the frequent flyer miles (178,943), reflected on the plaintiffs financial affidavit dated April 5, 2001.
 (12) For as long as the plaintiff is obligated to pay periodic alimony, he shall pay for and maintain in full force and effect for the benefit of the defendant the following two insurance policies on his life:
 a. Canseco in the amount of One Hundred Thousand Dollars ($100,000); and
 b. The Albert Group Life Insurance Policy in the amount of Twenty Thousand Dollars ($20,000).
 The plaintiff shall annually furnish the defendant proof of coverage by both policies. The defendant owns a policy on the plaintiffs life. She may continue to own this policy and pay the premiums for so long as the policy exists, or if she wishes to convert the policy and she is able to do so, to a new policy with a longer term. The plaintiff shall make himself available upon reasonable notice for a medical physical examination as required so that the defendant can convert the term policy she presently owns to a fixed term policy. The defendant shall own the converted policy and pay the premiums thereon. CT Page 5577
 (13) Each party shall be responsible for his/her own counsel fees.
 (14) The plaintiff shall be solely responsible for the payment of the Connecticut Income tax obligation for calendar year 2000 and Country Club Bond listed on his financial affidavit dated April 5, 2001.
 (15) The plaintiff shall be solely responsible for payment of the household expenses and personal expenses of the defendant that the plaintiff has been paying pending the trial of this matter through April, 2001. Included in this obligation is the payment of real property taxes due for the period of January through April, 2001.
Judgment may enter accordingly.
 ___________________________ NOVACK, JUDGE TRIAL REFEREE
 SCHEDULE A
1. Genori cookware
2. Wedgewood dinnerware china
3. Full set sterling silver including serving pieces and case (12 settings)
4. Rosenthal decorative plates
5. Dining room table, extension leaves (2), six chairs
16. Mirrored sideboard
7. Camel sculpture by Meisler
8. Mazzuza sculpture by Meisler
9. Menorah sculpture by Meisler
10. Bisque raised and covered dish with gold trim
11. Whalebone kayak sculpture
12. Whalebone standing seal sculpture
13. Green marble Eskimo sculpture and stand CT Page 5578
14. 2 white-striped fabric covered chrome chairs in living room
15. Chrome, brass and black glass coffee table in living room
16. Arc lamp in living room
17. 2 white couches in living room with some decorative pillows of Ms. Katz's choice
18. Equal division of all family and vacation picture albums
19. Sony stack stereo, case and speakers
20. Pink and green floral rug w/fringes in family room
 SCHEDULE A Page 2
21. Mimonades painting and frame
22. 1 round and 1 rectangular black, white floral pattern Chinese floor rugs in master bedroom
23. Picture of Mr. Katz's mother and frame on dresser
24. Graduation pictures (cap and gown)of children in master bedroom (copies)
25. Child pictures of Ted and Kim on wall near master bath (copies)
26. All outside Winston brand deck furniture, cushions, and covers (2 chaises, 4 chairs, 1 table 1 umbrella).
27. All furniture and possessions in Florida apartment at 9233 S.W. 8th St., Boca Raton (#302)